## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ulises M.,

        Petitioner,

v.

Pamela Bondi, *Attorney General*; Kristi
Noem, *Secretary, U.S. Department of
Homeland Security*; Todd M. Lyons, *Acting
Director, Immigration and Customs
Enforcement*; Immigration and Customs
Enforcement; Daren K. Margolin, *Acting
Director for Executive Office for
Immigration Review*, Executive Office for
Immigration Review; David Easterwood,
*Acting Director, St. Paul Field Office,
Immigration and Customs Enforcement and
Removal*; Lt. Joey Pederson, *Jail
Administrator of the Northwest Regional
Corrections Center*; Department of
Homeland Security,

        Respondents.

File No. 26-CV-1457 (JMB/JFD)

**ORDER**

Carrie Huxford Peltier, Peltier Law PLLC, Roseville, MN, for Ulises M.

David W. Fuller and David R. Hackworthy, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, Immigration and Customs Enforcement, Daren K. Margolin, Executive Office for Immigration Review, David Easterwood, and Lt. Joey Pederson, and Department of Homeland Security.

This matter is before the Court on Petitioner Ulises M.'s[1] Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241.    (Doc. No. 1 [hereinafter, "Pet."].) Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, Immigration and Customs Enforcement, Daren K. Margolin, Executive Office for Immigration Review, David Easterwood, and Lt. Joey Pederson, and Department of Homeland Security (together, "Respondents") are named in the Petition.  For the reasons explained below, the Court grants the Petition in part.

## FINDINGS OF FACT[2]

1.      Ulises M. is a native and citizen of Mexico who entered the United States in or around 2021 on an H2 visa, and thereafter failed to depart.  (Pet. ¶ 41–42.)

2.      Ulises M. is married to a United States Citizen and has a three-year-old child who is a United States Citizen who has been under medical care since birth with kidney function issues.  (*Id.* ¶ 43.)

3.      On or about February 11, 2026, Ulises M. was apprehended by immigration officials in North Dakota but was not issued a Notice to Appear.  (*Id.* ¶¶ 44–45.)

4.      On  or  about  February  11,  2026,  Ulises  M.  signed  a  I-210  Voluntary

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

[2] Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted.  *See, e.g.*, *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000).

Departure form.  (Doc. No. 1-2 at 2.)

5.    On February 16, 2026, Ulises M.'s counsel requested Respondents withdraw the Voluntary Departure Agreement because the agreement was not voluntarily entered into.  (*Id.* at 5.)  Three days later counsel for Ulises M. also informed the Court that Ulises M. was being moved and sought clarification ensuring that he was not being moved out of Minnesota in violation of the Court's previous order enjoining Respondents from doing so.  (Doc. No. 5.)

6.    On February 19, 2026, Respondents confirmed that they have voided/rescinded the Voluntary Departure Form I-210 and have served Ulises with a Notice to Appear initiating removal proceedings.[3]  (Doc. No. 6 at 2.)

7.    Respondents did not present Ulises M. with a warrant for his arrest.

8.    Ulises M. has no criminal history.

9.    On February 16, 2026, Ulises M. filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (Pet.)  Ulises M. seeks immediate release.  (*Id.* at 24.)  Ulises M. also seeks a variety of additional relief from the Court, including a declaration that Respondents' decision violates the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment as well as an award of attorney fees and costs pursuant to the Equal Access to Justice Act.  (*Id.* at 23–25.)

---

[3] Because Respondents have asserted that, as Ulises M. requested, they have voided and rescinded the Voluntary Departure Form I-210 and have served Ulises M. with a Form I-862, Notice to Appear, initiating removal proceedings (Doc. No. 6), the Court does not address the aspects of Ulises M.'s Petition requesting this relief.  Absent a specific request from Ulises M., the Court declines to address the issue at this time.

10.     That same day, the Court ordered Respondents to file a response to the Petition by February 19, 2026, at 11:00 a.m.  (Doc. No. 3.)  The Court also ordered Respondents to specifically address whether the absence of a warrant preceding Ulises M.'s arrest necessitates his immediate release.  (*Id.*)

11.     Respondents timely filed a response.  (Doc. No. 6.)

## DISCUSSION

Respondents generally oppose the Petition, explaining that it "raises legal and factual issues similar to those in prior habeas petitions this Court has decided" and that Respondents have appealed one such petition (*see Avila v. Bondi*, No. 25-3248 (8th Cir.)).  (Doc. No. 6.)  Respondents then incorporate by reference all of the arguments raised in the *Avila* appeal and request denial of the petition.  (*Id.*)  In this way, Respondents reiterate their argument that the detention of petitioners similarly situated to Ulises M. is mandatory pursuant to 8 U.S.C. § 1225(b).  As this Court has previously concluded, however, Respondents' interpretation lacks merit. Furthermore, Respondents do not address their failure to comply with a statutory requirement that they obtain a warrant prior to the arrest of Ulises M.  For these two reasons, the Court grants the Petition in part and orders his immediate release in Minnesota.

### A.     Constitutional Guarantee of Habeas Review

As a threshold matter, the Court notes that a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to

every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2));

*Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025).  For most of the nation's

history, habeas review "has remained a critical check on the Executive, ensuring that it

does not detain individuals except in accordance with law."  *Hamdi*, 542 U.S. at 525

(quotation omitted).  The right to challenge the legality of a person's confinement through

a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng*

*Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted).  The

petitioner bears the burden of proving that his detention is illegal by a preponderance of

evidence.  *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *5

(D. Minn. Aug. 27, 2025) (citing *Aditya W.H.*, 782 F. Supp. 3d at 703).

### B.    Interpretation of Section 1225

Courts have overwhelmingly rejected Respondents' interpretation that section

1225(b)(2) requires the mandatory detention of all noncitizens living in the country who

are "inadmissible" because they entered the United States without inspection. *See, e.g.*,

*Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 & n.22

(S.D.N.Y. Nov. 26, 2025) (noting that this interpretation had been rejected in 350 cases

"decided by over 160 different judges sitting in about fifty different courts spread across

the United States" and collecting cases in an Appendix A); *Jose Andres R.E. v. Bondi*, No.

25-CV-3946 (NEB/DLM), 2025 WL 3146312, at *1 n.2 (D. Minn. Nov. 4, 2025)

(collecting cases); *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL

2802947, at *5–6 (D. Minn. Oct. 1, 2025) (collecting cases).  This Court also finds

Respondents' interpretation unpersuasive.

When interpreting a statute, "every clause and word of a statute should have meaning." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks omitted) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)). Noncitizens who have been residing in the United States but who entered without inspection have not, historically, been considered to still be "arriving" under section 1225(b). This is because the statute itself states that, in order to apply, several conditions must be met; specifically, an immigration officer must determine that the noncitizen "is an applicant for admission . . . seeking admission . . . [and] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Determining the plain meaning of the statute requires consideration of the tense of the verb "is" and the present participle "seeking." Here, section 1225(b)(2) applies to persons who presently are applicants for admission and who presently are seeking admission at the time of their detention. To be seeking admission means to be seeking entry, which "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929). In this case, Ulises M. has been residing in the United States and is, therefore, not currently "seeking admission" into the United States.

In addition, Respondents' interpretation of 1225(b)(2) renders superfluous other immigration laws. Specifically, interpreting section 1225(b)(2) as applying to noncitizens who have already entered the country and are not currently seeking admission into the country, as Respondents urge, would render meaningless a recent amendment to section 1226 by the Laken Riley Act (LRA). The LRA added new categories of noncitizens subject to mandatory detention under section 1226(c), and one such category was for noncitizens

6

lacking valid documentation *and* who have been charged with or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). But if Respondents' interpretation of section 1225 were correct, then there would have been no need for the LRA to create these additional categories because all noncitizens who are present in the United States and have not been admitted would have already been ineligible for bond under section 1225(b)(2)(A).

The Court also agrees with those courts that have found that Respondents' interpretation of section 1225(b) is "at odds with both the relevant legislative history and longstanding agency practice." *Belsai D.S.*, 2025 WL 2802947, at *7; *see, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1150 (D. Minn. 2025) (discussing the longstanding practice of treating noncitizens who resided in the United States, but who had entered without inspection, as being subject to section 1226(a)).

For these reasons, the Court finds that Ulises M.'s detention is governed by section 1226(a), and he is not subject to section 1225(b)'s mandatory detention.

### C.    Independent Grounds for Relief

Ulises M. also alleges that Respondents are improperly detaining him without the required administrative warrant to do so. (Pet. ¶ 3.) The Court agrees with other judges in this District who have concluded that an arrest warrant is a prerequisite to detention under section 1226(a). *See Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *Juan S.R. v. Bondi*, No. 26-CV-5 (PJS/LIB), Doc. No. 8 at 3–4 (D. Minn. Jan. 1, 2026). *See also* 8 U.S.C. § 1226(a) ("*On a warrant issued by the Attorney General*, [a noncitizen] may be arrested and detained pending a decision on

7

whether the [noncitizen] is to be removed from the United States." (emphasis added)).  The

Petition alleges that Ulises M.'s arrest was warrantless (Pet. ¶ 3), and Respondents have

not presented evidence to the contrary.  Consequently, the Court grants the Petition and

orders Ulises M.'s immediate release.[4]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED in part and

DENIED in part, as follows:

1.    Respondents are ORDERED to release Petitioner from custody immediately in Minnesota without conditions, and in any event no later than 4:00 p.m. CST on February 20, 2026.

2.    On or before 11:00 a.m. CT on February 23, 2026, counsel for Respondents shall file a letter affirming that Petitioner was released from custody in Minnesota and without conditions in accordance with this Order.  Counsel shall also file a declaration on or before 11:00 a.m. CT on February 23, 2026, pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, affirms that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation), and whether or not Petitioner had ever been transferred.

---

[4] Given its decision to grant the Petition, the Court need not address the remaining counts in the Petition.  The Court also does not address the Petition's request for an award of fees and costs under the Equal Access to Justice Act; Ulises M. may move separately for such relief within 30 days of final judgment in this action.  28 U.S.C. § 2412(d)(1)(B).

3.     To the extent Petitioner seeks relief beyond an order requiring release or an order requiring a bond hearing, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 19, 2026                          /s/ *Jeffrey M. Bryan*
                                                   Judge Jeffrey M. Bryan
                                                   United States District Court